Whyte, J.
On the argument in this case, it is contended by the counsel for the plaintiff in error, that the record does not present any charge that is known to the law, as cognizable in our courts by indictment. On the part of the State, the attorney general contends, that the offence of an affray is sufficiently charged in and by the indictment. Authorities have been cited on this question; and books of forms of indictments for affrays, have also been referred to, for the purpose of showing that the form of the charge in the present indictment is a valid one for the offence of an affray; which will now be noticed. Blackstone, in the fourth volume of his Commentaries, page 145, says, affrays, from affrayer to terrify, are the fighting of two or more persons, in some public place, to the terror of his majesty’s subjects; for *358 ^ ^ %hting be in private it is no affray, but an assault. It will be observed, that according to this definition of an affray by Blackstone, three things are necessary to constitute it. First: There must be fighting. Second: This fighting must be by or between two or more persons. And, Third: It must be in some public place to cause terror to the people. Hence it must follow, that if either of these requisites are wanting, an affray does not exist. In the charge in this indictment, which is assumed to amount to an affray by its constitution, the two first of the above requisites are wanting, to wit, fighting, or actual violence, and the number of persons necessary for the constitution of it. To obviate this, and to prove that these particulars are not essential, Serjeant Hawkins is cited and relied upon, (book, 1, ch. 28, sec. 4;) where he says, “but granting that no bare words in the judgment of law, carry in them so much terror' as to amount to an affray, yet it seems certain, that in some cases there may be an affray where there is no actual violence, as where a man arms himself with dangerous and unusual weapons, in such a manner as will naturally cause terror to the people, which is said always to have been an offence at common law, and is strictly prohibited by many statutes.” It is to be remembered on this citation, that if the whole of the section, and the following ones of the chapter, are looked into, it will be found that the doctrine of the citation depends upon ancient English statutes, enacted in favour of the king, his ministers, and other servants, especially upon the statute of the 2 Edward III., which enacts, that no man, great nor small, of what condition soever he be, except the king’s servants, &c. shall go or ride armed by night or by day, &c. The book goes on and says, that persons of quality are in no danger of offending against this, statute by wearing their common weapons, or having their usual number of attendants with them, for their ornament or defence, in such places, and upon occasions in which it is the common fashion *359 to make use of them, without causing the least suspicion oí an intention to commit any act or violence, or disturbance of the peace. It may be remarked here, that ancient English statutes, from their antiquity and from long usage, were cited as common law; and though our ancestors, upon their emigration, brought with them such parts of the common law of England, and the English statutes, as were applicable and suitable to their exchanged and new situation and circumstances, yet most assuredly the common law and statutes, the subject matter of this fourth section, formed no part of their selection. The true construction of the portion of the fourth section above cited, is giving it an application to particular persons in particular places, under particular circumstances; this is proved by what Serjeant Hawkins has laid down previously in the first and second sections of the same chapter, under the same head, where he gives the general rule, concurring in substance with Blackstone; he says, “from this definition it seems clearly to follow, that there may be an assault which will not amount to an affray, as where it happens in a private place, out of the hearing or seeing of any except the parties concerned, in which case it cannot be said to be to the terror of the people; and for this cause, such private- assault seems not to be inquira-ble in a court, but as all affrays certainly are, as being common nuisances.” This passage concurs with and supports Blackstone in the above two particulars of actual violence, and the plurality of the persons concerned as actors, which it was assumed the citation from this fourth section dispensed with. The like deduction may be drawn from the second section, where it is laid down, “that no quarrelsome or threatening words whatsoever, shall amount to an affray, and that no one can justify laying his hands on those who shall barely quarrel with angry words, without coming to blows.” But suppose it to be assumed on any ground, that our ancestors adopted and brought over with them, this English statute, *360 or portion of the common law, our constitution has corn-pletely abrogated it; it says, “that the freemen of this State have a right to keep and to bear arms for their common defence.” Article 11, sec. 26. It is submitted, that this clause of our constitution fully meets and opposes the passage or clause in Hawkins, of “a man’s arming himself with dangerous and unusual weapons,” as being an independent ground of affray, so as of itself to constitute the offence cognizable by indictment. By this clause of the constitution, an express power is given and secured to all the free citizens of the State to keep and bear arms for their defence, without any qualification whatever as to their kind or nature; and it is conceived, that it would be going much too far, to impair by construction or abridgement a constitutional privilege, which is so declared; neither, after so solemn an instrument hath said the people may carry arms, can we be permitted to impute to the acts thus licensed, such a necessarily consequent operation as terror to the people to be incurred thereby; we must attribute to the framers of it, the absence of such a view.
On the authorities, therefore, I am of opinion, that this record of an indictment against the plaintiff in error, does not contain the charge of an affray, or any other specific offence cognizable at common law by indictment, and that there is nothing either in our constitution or acts of assembly, in repugnancy to this conclusion; but, on the contrary, strongly corroborative thereof. I will notice the precedents of the forms of the offence of an affray, that have been introduced by the attorney general, as evidences of the law in reference to the indictment in the record. These precedents have been introduced; one from Archbold’s Criminal Pleading, page 337; another from Henning’s Virginia Justice, page 23; and the third volume of Review of the Criminal Law, page 261. These precedents have been introduced for the purpose of supporting the present indictment, from their sameness to it, *361 or identity of form and charge. It will be remembered, that the present indictment charges, that William Simpson, labourer, with force and arms being arrayed in a warlike manner, in a certain public street or highway situate, unlawfully, and to the great terror and disturbance of divers good citizens, did make an affray in contempt of the law, &c. making the plaintiff in error, William Simpson, the only actor. All the three precedents introduced, however, state a plurality of actors in making the affray, naming them with their additions, as A. 0. tailor, and B. 0. blacksmith, and with force and arms did make an affray, pursuant to the doctrine laid down by Blackstone, and therefore they do not support the present indictment; but all are also defective in their not stating the acts in which the affray consisted, as the fighting of the actors, the inflicting of blows by them, or the commission of some other act or acts of violence, stating in what they consisted. Chitty, whose accuracy is well known in his criminal law, has given us a precedent of an affray, as follows, in the charging part, to wit: “That the said C. D. in and upon them the said J. B. and J. A. being then and there in the peace, &c. unlawfully and violently did make an assault and affray; he, the said C. D. did then and there, with force and arms, unlawfully and violently beat, wound and treat so ill, that their lives were greatly despaired of,” &c. Here a certain specific charge is made, of unlawfully and violently beating and wounding certain persons, by name, with its degree, “so that their lives were greatly despaired of.” But the charge “made an affray,” in this record, is altogether too general; it does not give that information to the court, or the party charged, which the law requires in conducting criminal proceedings. This information should consist in a fair development upon the record of the transaction, stating the material facts assumed to constitute the offence charged, so that the court may see whether a specified of-fence, cognizable by the law, is imputed; and if so, and a *362 conviction should follow, that it may be seen what judgment should be pronounced thereon. Such statement is also important to the party charged, that he may be prepared to make his defence, if he has any, and that his conviction or acquittal may enure to his future protection, should he be again charged on the same ground, and that he may be enabled to plead his previous conviction or acquittal of the same offence in bar of any subsequent proceedings. See 1st Chitty’s Criminal Law, 169. Here, on this record, it is not stated that the plaintiff in error fought with any person, or committed any act of violence on any one, setting forth its nature, or that he inflicted blows on any person, with the attendant manner and circumstances, and also in each case naming the person or persons, if known, and if not known, stating that fact; all of which ought to appear in the charge, if they existed. As they do not so appear, their existence is not to be intended. And so it is laid down in the same book, page 172, which says, “the charge must be sufficiently explicit to support itself, for no latitude of intention can be allowed to include any thing more than there is expressed.” There is, therefore, error in the judgment of the circuit court, which must be reversed; and this court pro- • ceeding to give such judgment as the circuit court should have given, direct the indictmelit to be quashed for its insufficiency.
Catron, Ch. J. and Green, J. concurred.