GILLEN *v.* STATE.

SHELTON *v.* SAME.

(*Knoxville*, September Term, 1947.)

Opinion filed October 18, 1947.

PRICE & PRICE, of Johnson City, for Void Gillen.

JOHN KILGO, of Greeneville, and GUINN & MITCHELL, of Johnson City, for Donald Shelton.

NAT TIPTON, Asst. Atty. Gen., for the State.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Gillen and Shelton engaged in a pistol duel on one of the public roads of Washington County. This resulted in a separate indictment of each charging assault with intent to commit murder in the first degree.

By agreement both cases were tried to the same jury as one case, and a verdict upon each indictment was returned finding Gillen and Shelton each guilty of simple assault. The punishment in each case was a fine of $100 and confinement in the workhouse for eleven months and twenty-nine days. Each has appealed from the action of the Court in overruling his motion for a new trial, containing probably the same grounds, and in entering judgment on the verdict.

By their respective assignments of error upon their separate appeals each insists that the preponderance of the evidence is that he only acted in his own necessary self defense in repelling the assault of the other. They both insist that both of them could not, as a matter of

law, be guilty of an assault on the other in the same fight. They contend that if one is guilty of an assault, the other is necessarily not guilty. Each contends that it is the other who is guilty.

Shelton and his wife had been separated but not divorced for some months previous to and at the time of this pistol duel. Gillen had for two months been seeing Mrs. Shelton and going with her regularly; or, in the language of Mrs. Shelton "stepping out" on her husband with Gillen. She says they filled engagements two or three times a week during this two months period. Shelton resented this. Gillen knew of this resentment, and anticipated that the continued association with Shelton's wife might lead to a personal difficulty between the two men. Accordingly, he armed himself with a pistol. Mrs. Shelton, who became reconciled with her husband after the pistol duel, testifies that Gillen told her that Shelton had threatened him and Gillen said further that if Shelton "ever caught us together he would use his gun," meaning that Gillen would use his gun. Shelton testifies that he had been informed of this remark, his exact language being "I understood if I ever caught him and my wife together he would try to kill me," and that he, Shelton, called upon the sheriff for protection.

The parties all lived in or around Greeneville. On the day of the difficulty, Gillen and Mrs. Shelton met in Greeneville and were traveling in his car towards Johnson City when they met Shelton coming in his taxicab from the opposite direction. All parties recognized each other as the cars passed. Shelton at once turned his car around and started in pursuit of Gillen. Mrs. Shelton got on the floor of the car. Gillen, in order to escape Shelton, drove his car at its maximum speed, he says, ninety miles an hour. However, Shelton continued to

gain on him. In Shelton's car were four other people. During the pursuit, Shelton took his pistol from the pocket of his car and Gillen held his in his hand, according to the testimony of Mrs. Shelton. After the pursuit had continued for two miles, Gillen turned onto a side road and hastened to drive to the home of his sister, about one and one-half miles further and there stopped on the extreme edge of this public road. Shelton, who had continued in hot pursuit, almost immediately pulled the front of his car up and close to but partially behind Gillen's car. The shooting began immediately with all other occupants of each car crouched on the floor. While it cannot be determined with a reasonable assurance of accuracy, the proof rather points to Gillen as the one who first fired. Shelton fired six shots, emptying his gun. Gillen 'fired twice, he says. Shelton says Gillen emptied his gun, reloaded and fired twice. The weight of the evidence is probably against this statement, however. A truce was then called by Shelton. Each surrendered his pistol, and the battle ended. No one had been hurt, but each of the cars had been struck by bullets.

It is the insistence of the State that the conduct of Gillen and Shelton was in fact and law an affray; and that each is guilty of this common law offense. It is the further insistence of the State that an assault is an essential ingredient of an affray. Therefore, says the State, each being guilty of an affray, it results that each is guilty of an assault, without regard to whether either acted in self defense, as each insists for himself.

■ In the case cited by the State in support of its insistence, it being the case of *Simpson* v. *State,* 13 Tenn. 356, 357, this Court held, "affrays . . . are the fighting of two or more persons, in some public place, to the terror of his majesty's subjects; for if the fighting be

in private, it is no affray, but an assault." This is the law.

The pistol duel engaged in by these two men was in a public highway. Five other persons were present. It was immediately apparent to each of these five that their lives were in iminent peril. This, of course, put each of them in terror. Gillen and Shelton were each making a deadly assault upon the other. Each was, therefore, guilty of an affray, leaving for the moment the element of self defense out of consideration, and each was guilty of an assault, a necessary ingredient of an affray.

One who engages in such public fight is not guilty of an affray, if he is acting solely in his own self-defense, provided such self defender did not provoke the fight. It is otherwise, if he provoked the fight. The text in 2 Corpus Juris, page 387, states the rule as follows:

"Self defense, when established, is a complete justification under a prosecution for an affray. But this defense applies only where the party setting it up is without fault, and hence he cannot avail himself of such defense where, by the use of abusive or improper language, calculated and intended to bring on a fight, he himself provoked the affray, especially where he was ready and willing to fight." See, also, 2 C. J. S., Affray, Sec. 11b.

Shelton testifies that he "understood if I ever caught him and my wife together he would kill me." Having so understood, he arms himself with a pistol, and when he passes Gillen's car with Gillen and his wife in it, he turns and pursues them with all the speed his automobile has and with his pistol at his hand for instant use. He understood, according to his own testimony, that if he succeeded in overtaking them it would bring on a deadly fight. Yet he persisted to the point of success in the pursuit and overtaking of Gillen, with his pistol ready

for instant use. It must be concluded that he was ready and willing to fight, and by his conduct knowingly assisted in bringing it about. He knew, too, that this fight would occur in the public highway, if he succeeded in overtaking Gillen, as he was endeavoring to do, and that it would endanger the lives of the four other occupants of his car. Shelton was, therefore, guilty of an affray, and, being guilty of this offense was necessarily guilty of the assault for which he was convicted.

The conduct of Gillen is equally as culpable. It is true that he sought to avoid the immediate conflict. However, according to his own testimony, he had been told that Shelton was looking for him with the intention of attacking him and he armed himself with this pistol, ''so as to be ready'' if they should meet. He necessarily knew that the hostility of Shelton was entirely due to his unjustifiable association with Shelton's wife. They all lived in the moderate size town of Greeneville. Gillen necessarily knew, or should have known, that if he appeared on the streets or highways in and around Greeneville with Shelton's wife, he would sooner or later, upon some such occasion, encounter Shelton, and that the presence of Shelton's wife with him would, according to his own testimony, provoke Shelton to the attack, against which he, Gillen, had armed himself with a pistol. In spite of this knowledge, Gillen persisted in his wrongful association with Mrs. Shelton, and in the day time on the occasion in question picked her up on a street of Greeneville and drove through its street and on its nearby highway with her in the car beside him. It cannot, therefore, be said with any degree of plausibility that Gillen was without material fault in bringing about the affray in which he shot at least twice at Shelton. His conduct was calculated to bring on this fight, and by his own admission, he knew

that. Notwithstanding this, he continued his wrongful association with Mrs. Shelton by publicly appearing with her at a time and place when and where he knew there was a likelihood of meeting Shelton. Gillen, therefore, knowingly provoked the affray, ready to fight, if it should occur. Being guilty of an affray, he was necessarily guilty of the assault for which he was convicted.

Our discussion above disposes of all the assignments of error made by each plaintiff-in-error. It results that all of these assignments are overruled and the judgment in each case is affirmed.

All concur.